# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Rafael D.C., | Civ. No. 26-2449 (JWB/SGE) |
| Petitioner, | |
| v. | |
| Todd Blanche, *Attorney General*; Markwayne Mullin, *Secretary of Homeland Security*; Todd M. Lyons, *Acting Director of U.S. Immigration & Customs Enforcement*; Marcos Charles, *Acting Executive Associate Director for Enforcement and Removal Operations*; David Easterwood, *Field Office Director for Enforcement and Removal Operations*; U.S. Department of Homeland Security; U.S. Immigration & Customs Enforcement; and Eric Tollefson, *Kandiyohi County Jail*, | **ORDER ON PETITION FOR WRIT OF HABEAS CORPUS** |
| Respondents. | |

Elizabeth Sue Eckholm, Esq., and Nicholas Ratkowski, Esq., Ratkowski Law PLLC, counsel for Petitioner.

David W. Fuller, Esq., and Worthington Phillips, Esq., United States Attorney's Office, counsel for federal Respondents.

Petitioner Rafael D.C. is a noncitizen who was detained within the United States and remains in immigration custody without any opportunity to seek release on bond. This case presents a narrow question: whether a noncitizen who previously entered the United States, obtained work authorization, lived and worked in the community for several years, and was later detained as an applicant for admission may be held without

any meaningful opportunity to obtain an individualized determination regarding the justification for his continued detention.

The governing statute authorizes detention of noncitizens classified as applicants for admission. But statutory authority to detain does not itself resolve whether the manner in which that authority is exercised satisfies the Due Process Clause. Whether the Constitution requires additional process under the circumstances presented here is a separate question. On the facts of this case, the answer is to provide Petitioner with a prompt bond hearing.

## BACKGROUND

Petitioner is a citizen of Mexico. (*See* Doc. No. 1, Petition ¶¶ 2, 24.) He entered the United States without inspection in July 2020 and currently resides in Fargo, North Dakota. (*Id.* ¶¶ 24, 115; *see also* Doc. No. 7-2, Resp. Ex. B at 1.) He has a pending asylum application, a valid work permit, and no criminal history. (Petition ¶¶ 2, 79; *see also* Doc. No. 10-4, Pet. Ex. D.)

On April 16, 2026, Immigration and Customs Enforcement ("ICE") agents detained Petitioner as he was driving to work. (Petition ¶ 3, Resp. Ex. B. at 2; Doc. No. 10-1, Petitioner Aff. ¶ 2.) ICE had been investigating Petitioner after receiving a report from Fargo police that he had shown Mexican identification cards during a prior encounter. (*See* Resp. Ex. B at 2.)

Petitioner alleges that he was arrested without a warrant. (Petition ¶ 3.) He attests that agents driving unmarked vehicles with flashing lights forced him to pull into a driveway, removed him from his vehicle at gunpoint, then threw him to the ground and

2

beat him while yelling at him in English. (Petitioner Aff. ¶¶ 3–9.)

Respondents' records indicate that Petitioner was served with an I-200 warrant at the time of arrest. (*See* Doc. No. 7-1, Resp. Ex. A; Doc. No. 7-2, Resp. Ex. B. at 2.) Their record of the encounter states that Petitioner attempted to flee on foot, did not cooperate with verbal commands, and aggressively resisted arrest. (Resp. Ex. B. at 2.) Petitioner's dashcam recording does not show him attempting to flee or resisting arrest; rather, it shows agents immediately removing him from his vehicle and forcing him to the ground. (*See* Doc. No. 10-2, Pet. Ex. B.)

Petitioner was served with a Notice to Appear charging him as being present without admission or parole and as lacking a valid entry document. (Petition ¶ 79; Doc. No. 7-3, Resp. Ex. C.) He also received a Notice of Rights stating that he has the right to a hearing, and that if one is requested, "you may be detained, or you may be eligible to be released from detention, either with or without payment of bond." (Doc. No. 7-4, Resp. Ex. D. at 1.) Petitioner signed the portion of the form indicating that he believes he will face harm if he returns to Mexico and requesting that his case be referred for a hearing. (*Id.*)

Petitioner has since remained detained at the Kandiyohi County Jail in Willmar, Minnesota. (Petition ¶¶ 23, 29, 98.)

**DISCUSSION**

I.     **Legal Standard**

A writ of habeas corpus may issue where a petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Petitioner bears the burden of

3

establishing, by a preponderance of the evidence, that his detention lacks a lawful basis. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting cases).

Petitioner claims his detention violates the Immigration and Nationality Act. (Petition ¶¶ 4, 111–16.) In light of *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), that claim is foreclosed in this Court. Petitioner separately claims his detention is unlawful because it violates the Due Process Clause of the Fifth Amendment. (Petition ¶¶ 117–21.) He also claims he was arrested without probable cause and a valid warrant in violation of the Fourth Amendment. (*Id.* ¶ 122.) Finally, he asserts claims under the Administrative Procedure Act and the *Accardi* doctrine. (*Id.* ¶¶ 123–39.)

The Petition challenges only the legal basis for Petitioner's present detention. It does not challenge the initiation of removal proceedings, the validity of any removal order, or the execution of removal. Jurisdiction therefore lies under 28 U.S.C. § 2241 to review the legal basis for custody. *See, e.g.*, *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154–55 (D. Minn. 2025). Because the Petition challenges only Petitioner's detention, and not his removability or any removal order, the statutory jurisdiction-channeling provisions do not apply. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018).

## II.   Analysis

### A.   Statutory Detention Authority

Respondents contend that Petitioner is an applicant for admission subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).

Section 1225 applies to "applicants for admission," defined as a noncitizen

"present in the United States who has not been admitted or who arrives in the United States." *See* 8 U.S.C. § 1225(a). Section 1225(b)(2)(A) provides that applicants for admission who are "seeking admission" and "not clearly and beyond a doubt entitled to be admitted" "shall be detained" for removal proceedings. *Id.* § 1225(b)(2)(A).

The Eighth Circuit recently affirmed Respondents' position that the phrases "applicant for admission" and "seeking admission" are the same. *Avila*, 170 F.4th at 1134–36. Under *Avila*, a noncitizen present in the United States who has not been lawfully admitted is treated as an applicant for admission for § 1225(b)(2)(A) purposes, regardless of whether they were encountered at the border or within the interior. And under that statutory provision, the government can detain without bond. *See id.* at 1138 (finding the district court "erred in holding that the Government could not detain Avila without bond under § 1225(b)(2)(A)"); *see also Jennings*, 138 S. Ct. at 851 (pointing out that § 1225(b)(2) does not reference bond hearings and finding that periodic bond hearings are not required under a statutory construction analysis).

Respondents assert that Petitioner, as a noncitizen who has not been lawfully admitted, is deemed to be an applicant for admission and subject to mandatory detention without bond, no matter how far from the border he was apprehended or how long he had been living inside the country.

That is an accurate statement of § 1225(b)(2)'s meaning under *Avila*. Petitioner therefore cannot prevail on the theory that his detention violates the statute itself. But that conclusion does not resolve this case. Statutory authority to detain does not itself resolve whether the manner in which that authority is exercised comports with the Constitution.

Indeed, in *Jennings*, the Supreme Court rejected a statutory construction that would have required bond hearings under § 1225(b)(2), while expressly declining to decide the constitutional question. 138 S. Ct. at 851.

The Constitution raises a separate inquiry. The Fifth Amendment's Due Process Clause protects noncitizens in removal proceedings from deprivations of liberty without due process of law. *Reno v. Flores*, 507 U.S. 292, 306 (1993). Thus, even where Congress has authorized mandatory detention, this Court must still determine whether the procedures afforded satisfy the requirements of due process under the particular circumstances presented.

Therefore, the question here is not whether Congress authorized Petitioner's detention under § 1225(b)(2). It did, according to *Avila*. The question is whether, under the specific facts of this case, Petitioner's continued detention without any meaningful opportunity to obtain an individualized determination regarding the justification for that continued detention satisfies the Due Process Clause.

**B.      Constitutional Protections**

The Fifth Amendment prohibits the government from depriving any person of liberty without due process of law. U.S. Const. amend. V. That protection extends to all persons physically present within the United States, including noncitizens, regardless of whether their presence is lawful, unlawful, temporary, or permanent. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Although civil immigration detention is constitutionally permissible in appropriate circumstances, it must remain reasonably related to its nonpunitive purposes and must satisfy the requirements of procedural due process.

*Jackson v. Indiana*, 406 U.S. 715, 738 (1972).

As explained above, the question is not whether Congress authorized Petitioner's detention under § 1225(b)(2)(A). The question is whether Petitioner's continued detention, under the specific facts presented here, comports with the Due Process Clause. *See Smith v. Org. of Foster Fams. for Equal. & Reform*, 431 U.S. 816, 847 (1977) (recognizing that once a protected liberty interest is shown, the next step is to determine what process is due in the particular context.) That inquiry is governed by the familiar balancing framework established in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), which considers (1) the private liberty interest affected, (2) the risk of an erroneous deprivation through the procedures used and the probable value of additional safeguards, and (3) the government's interests.

Respondents contend that no procedural due process inquiry is needed. They argue that because Petitioner is treated by statute as an applicant for admission, Congress has already determined the circumstances under which detention is required and no additional process is constitutionally necessary. Their authorities do not go so far.

Neither *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), nor *Kaplan v. Tod*, 267 U.S. 228 (1925), forecloses Petitioner's claim. Those decisions address the constitutional status of applicants for admission and the legal consequences of parole for immigration law purposes. They do not hold that the Executive may continue to deprive a person physically present within the United States of liberty without constitutionally adequate procedures under the particular circumstances presented here.

*Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953), likewise does

7

not control. *Mezei* involved an individual detained at the threshold of entry after exclusion from the United States—not a person who entered the country, had been released into the community, complied with immigration supervision for years, and was later re-detained within the interior.

Respondents also rely on *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003), arguing that because § 1225(b)(2)(A) does not make detention contingent upon dangerousness or flight risk, procedures directed toward those questions are irrelevant. *Connecticut* is not controlling. There, the Supreme Court held that due process did not require a hearing on dangerousness before convicted sex offenders were placed on a state registry. *Id.* at 7–8. Because the registration statute operated solely on the fact of prior conviction, a determination on dangerousness was irrelevant to the statutory scheme. *Id.* Here, by contrast, Petitioner does not seek a pre-detention hearing on facts that Congress made irrelevant to classifying noncitizens as subject to § 1225(b)(2)(A). He contends that the Due Process Clause itself requires a meaningful opportunity for an individualized determination to justify the continued deprivation of his fundamental right to be free from physical confinement. *Connecticut* does not foreclose the constitutional inquiry presented in this case.

*Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024), does not compel a different conclusion either. *Banyee* concerned mandatory detention under § 1226(c), arising from criminal removability, and principally rejected a claim that detention had become unconstitutional because of its duration. Petitioner's claim is different. He does not seek a temporal limitation on detention. Instead, he challenges the absence of any individualized

8

process to test whether continued detention remains justified in his case.

Applying the *Mathews* factors, Petitioner's liberty interest is substantial. Petitioner was not encountered at the border or while attempting to enter the United States. Rather, he was arrested within the interior after living in this country for nearly six years. During that time, he secured work authorization from the federal government, maintained employment, pursued an affirmative asylum application, and created no criminal history. He also established family and community ties. Although those facts do not alter Petitioner's statutory status as an applicant for admission, they bear directly on the nature of the liberty interest at stake. Continued physical confinement under these particular circumstances constitutes a significant deprivation of liberty.

The second *Mathews* factor likewise weighs in Petitioner's favor. Respondents have never provided Petitioner any meaningful opportunity to obtain an individualized determination as to whether continued detention remains justified. The government's detention decision rests entirely on Petitioner's statutory classification as an applicant for admission. But this record also contains factual disputes regarding the circumstances of Petitioner's arrest. Respondents' account states that Petitioner fled on foot and aggressively resisted arrest. The dashcam video appears to support an opposite conclusion. Whether those disputes ultimately affect Petitioner's custody is not the point. The point is that the existing procedure provides no mechanism for testing the factual basis of continued detention or for determining whether continued confinement remains justified under the particular circumstances of this case. That creates a substantial risk of erroneous deprivation.

The government's interests are also substantial. Congress has a legitimate and important interest in ensuring that applicants for admission appear for removal proceedings and in protecting the public where appropriate. Requiring an individualized custody determination, however, does not undermine those interests. It simply requires that continued detention be supported by an individualized assessment before a neutral decisionmaker. Where, as here, Petitioner has lived in the community for years, obtained work authorization, maintained employment, and has no criminal history, the modest administrative burden associated with such a determination is outweighed by the significant private liberty interest at stake and the risk of erroneous deprivation.

Under the particular circumstances presented here, Petitioner's continued detention without any meaningful opportunity to obtain an individualized determination regarding the justification for that detention does not satisfy procedural due process. Accordingly, his continued detention violates the Due Process Clause of the Fifth Amendment.

### C.    Fourth Amendment and Other Claims

Because Petitioner's continued detention violates the Due Process Clause for the reasons discussed above, his Fourth Amendment and other administrative claims are not reached. This Court expresses no opinion regarding the merits of those claims.

### D.    Remedy

The constitutional deficiency identified here is procedural, not statutory. Although § 1225(b)(2) authorizes Respondents to detain Petitioner as an applicant for admission, that statutory authority does not eliminate the constitutional requirement that continued

immigration detention satisfy due process under the circumstances presented here.

The appropriate remedy is to require Respondents to provide the constitutionally adequate process that has been lacking. Under the existing statutory and regulatory framework, a prompt individualized custody hearing before an Immigration Judge is the appropriate means of providing that process. This relief is not constitutionally required in every case arising under § 1225(b)(2). Rather, it is warranted under the particular facts of this case, including Petitioner's years-long presence in the United States without a criminal history, his possession of a valid work permit and a job in his community, the absence of any individualized custody determination, and the discrepancies between Respondents' description of Petitioner's arrest and the video footage of that encounter.

Respondents shall therefore provide Petitioner with an individualized custody hearing before an Immigration Judge within seven days of this Order. At that hearing, Respondents may seek continued detention based upon an individualized showing that Petitioner presents a flight risk, a danger to the community, or another lawful basis warranting continued detention.

Petitioner's statutory classification as an applicant for admission remains relevant to Respondents' detention authority, but it does not, standing alone, resolve whether continued detention is constitutionally permissible under the circumstances presented here. If Respondents do not provide the required custody hearing within seven days, Petitioner shall be immediately released from custody.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this case,

11

**IT IS HEREBY ORDERED** that:

1.      Petitioner Rafael D.C.'s Petition for Writ of Habeas Corpus (Doc. No. 1) is **GRANTED IN PART**.

2.      Petitioner's continued detention, under the particular circumstances presented here and without any meaningful opportunity to obtain an individualized determination regarding the justification for that continued detention, violates the Due Process Clause of the Fifth Amendment.

3.      Within **7 days** of the date of this Order, Respondents shall provide Petitioner with an individualized custody hearing before an Immigration Judge in Minnesota. At that hearing, Respondents may seek Petitioner's continued detention based upon an individualized showing that continued custody is justified.

4.      Respondents, or anyone acting in concert with Respondents, are **ENJOINED** from removing, transferring, or otherwise facilitating the removal of Petitioner from the District of Minnesota until the custody hearing required by this Order has been conducted and the Immigration Judge has issued a custody determination.

5.      If Respondents do not provide the hearing required by Paragraph 3 within 7 days of the date of this Order, Petitioner shall be immediately released from custody.

6.      If Petitioner is released:

    a.  **Release and Return of Property.** In the event that Respondents release Petitioner, he must be released in Minnesota. At the time of Petitioner's release, Respondents shall return to Petitioner all personal property in Respondents' custody or control, including but not limited to, passports, identity papers or licenses, immigration records, prescribed medications, and treatment-related equipment. Release may not be delayed for any reason related to the retrieval, processing, or return of such property.

Any delay or failure to effectuate release in accordance with this paragraph constitutes noncompliance with this Order.

b. **Return to Minnesota.** If Petitioner is currently held outside Minnesota, Respondents shall initiate Petitioner's return to Minnesota for the sole purpose of effectuating release. Respondents shall not delay initiating Petitioner's return based on administrative convenience, transportation availability, or detention-capacity considerations.

c. **Weather-Related Delay.** If weather conditions present a safety risk at the time of release, Respondents may delay physical release only for the brief period necessary to ensure safe release. Any such delay must be strictly limited and may not be used to justify continued custody where a safe alternative is available.

d. **No Recharacterization of Custody.** Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release (including release on recognizance or similar instruments), without prior notice to and authorization from the Court, or absent a new and independently lawful custody decision properly executed under the law. For the avoidance of doubt, Respondents' compliance with this Order would require Petitioner's release in Minnesota without any newly issued instrument that either imposes new conditions of supervision or restraint or restates previously imposed conditions. Any such conditions imposed at the time of Petitioner's release shall be considered null and void as inconsistent with this paragraph.

7. **Notice.** On or before **August 3, 2026**, Respondents shall file a notice advising whether they have complied with this Order. If a custody hearing has been conducted, Respondents shall report the disposition of that hearing. If Petitioner has been released, Respondents shall state the date, time, and location of the release.

8. Because the Petition is resolved on due process grounds, Petitioner's remaining habeas claims are not reached.

9. Petitioner's Motion to Expedite Decision (Doc. No. 20) and Motion for

13

Temporary Restraining Order (Doc. No. 22) are **DENIED AS MOOT**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: July 24, 2026                          *s/ Jerry W. Blackwell*
Time: 3:24 p.m.                               JERRY W. BLACKWELL
                                             United States District Judge